IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JONATHAN DIPERNA, | ) | |
| | ) | Civil No. 1:07-cv-00136-BSJ |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | **& ORDER RE: CLAIM OF LIEN** |
| | ) | |
| ICON HEALTH & FITNESS, INC., a | ) | |
| Utah Corporation, and FREEMOTION | ) | |
| FITNESS, INC., a Utah Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

<div style="border:1px solid black;">

**FILED**
CLERK, U.S. DISTRICT COURT
October 9, 2013 (3:23pm)
DISTRICT OF UTAH

</div>

\* \* \* \* \* \* \* \* \*

Still pending before this court is plaintiff Jonathan Diperna's November 12, 2010 motion
to extinguish the claim of attorney's lien filed by his previous counsel Norman Yatooma &
Associates ("NYA") (CM/ECF No. 123).[1]

The motion was first heard on December 17, 2010, at which time the court heard and
considered the argument of counsel and took the matter under advisement.[2]  On March 11, 2011,
the court entered an order denying the motion to extinguish claim of lien, based upon its
determination that applying principles of *quantum meruit*, NYA was entitled to be paid $45,000
from the settlement funds in this case for costs expended and the reasonable value of services
rendered.[3]

---

[1](Claim of Lien, filed Sept. 25, 2009 (CM/ECF No. 85); Plaintiff's Motion to Extinguish
Claim of Lien, filed Nov. 12, 2010 (CM/ECF No. 123).)

[2](*See* Minute Entry, dated December 17, 2010 (CM/ECF No. 132).)

[3](*See* Order Regarding Claim of Lien, filed March 11, 2011 (CM/ECF No. 136).)

NYA appealed, and on August 30, 2012, the Clerk of the Court docketed the mandate of the court of appeals remanding the matter, seeking from this court "'a concise but clear explanation of its reasons for the fee award,' one that affords us an 'adequate basis' for assessing whether or not an abuse of discretion took place." (Order and Judgment, filed August 8, 2012, in *Diperna v. Icon Health and Fitness, Inc., et al.*, 491 Fed. Appx. 904, 907, Case Nos. 11-4093 and 11-4104 (10th Cir.) (Unpublished disposition), at 5 (quoting *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quotations omitted)).)[4]

After remand, this court again heard from counsel at a rehearing of plaintiff's motion on March 8, 2013, and again took the matter under advisement.[5]

On June 6, 2013, the parties filed a stipulation as to the amount of "costs" incurred by NYA while representing the plaintiff, namely $16,876.90, effectively resolving that question.[6]

---

[4]The court of appeals elaborated upon what an "adequate basis" demands:

> Now, we hardly mean to suggest the district court must render a tome of laborious length and flush with footnotes to avoid the possibility of a remand. We do not require punctiliousness for punctiliousness's sake. Often the record will be clear enough that we can fairly trace the district court's path even if its opinion fails to give exacting point-by-point directions of the route it followed. Neither, to be sure, is there a geometric formula or rigid rule available here. What matters instead is whether, in each and every case that comes before us, we can fairly say we have enough information to be able to discharge faithfully our legally assigned duty of review. *See generally N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 834 (10th Cir. 1996) (district courts must "sufficiently articulate specific reasons for fee awards to give us an adequate basis for review") (quotation omitted).

*Id.*, 491 Fed. Appx. at 907, slip op. at 6.

[5](*See* Minute Entry, dated March 8, 2013 (CM/ECF No. 178).)

[6](Stipulation Concerning Costs that Norman Yatooma & Associates, P.C. Spent in
(continued...)

**The Factual Context**

Plaintiff Jonathan Diperna was injured in Wixom, Michigan on December 11, 2006 while using a piece of exercise equipment manufactured by the defendants.[7]  On December 27, 2006 Plaintiff retained NYA to represent him in a lawsuit against the defendants arising out of that injury.[8]  NYA served as Diperna's counsel of record in this case from October 10, 2007 (when the Complaint was filed) until August 25, 2009, when NYA's motion to withdraw as counsel was granted.[9]

Following NYA's withdrawal, Diperna sought other representation and was able to retain Craig Hilborn as his attorney.[10]  Robert Sykes was also retained as local counsel.[11]  On December 17, 2010 this Court was informed that a settlement between the parties had been reached, the specific terms of which the parties deemed to be confidential.[12]

The parties having reached a mutually satisfactory resolution of Mr. Diperna's claims, attention turned to the question whether and to what extent NYA may now benefit from that

---

[6](...continued)
Representing Jonathan Diperna, filed June 6, 2013 (CM/ECF No. 179).)

[7] (Complaint, filed Oct. 11, 2007 (CM/ECF No. 2), at ¶ 4; Answer, filed January 15, 2008 (CM/ECF No. 10), at ¶ 4.)

[8] (*See* Plaintiff's Motion to Extinguish Claim of Lien (CM/ECF No. 123), at Exh. 1.)

[9] (Complaint (CM/ECF No. 2); Order Granting Motion to Withdraw as Attorney, filed August 25, 2009 (CM/ECF No. 79).)

[10] (Order Granting Motion for Admission Pro Hac Vice of Craig E. Hilborn, filed September 21, 2009 (CM/ECF No. 83).)

[11] (Motion for Admission Pro Hac Vice of Craig E. Hilborn, filed September 18, 2009 (CM/ECF No. 82).)

[12](*See* Transcript of Hearing, dated December 17, 2010 ("Tr. 12/17/10"), at 4:4-5:18.)

resolution because of NYA's claimed attorney's lien.[13]

Ten months after being engaged by Mr. Diperna, NYA filed the Complaint,[14] commencing the above-entitled action. The defendants waived service of process,[15] and filed their Answer on January 15, 2008.[16] An NYA attorney appeared by phone at an initial status and scheduling conference on March 19, 2008,[17] and a pretrial schedule was set, with a fact and expert discovery cutoff of February 2, 2009, a post-discovery motion cutoff of February 16, 2009, and a pretrial conference on April 17, 2009.[18]

The parties then proceeded to propound written discovery requests to each other, including quite broad interrogatories and document requests served by NYA.[19] In September

---

[13]The court may exercise supplemental jurisdiction over this attorney fee dispute. *See, e.g.*, *Kalyawongsa v. Moffett*, 105 F.3d 283, 287–88 (6th Cir. 1997) ("[A]lthough attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.").

[14](Complaint, filed October 11, 2007 (CM/ECF No. 2).)

[15](*See* Waiver of Service, filed January 2, 2008 (CM/ECF No. 9).)

[16](*See* Answer, filed January 15, 2008 (CM/ECF No. 10).)

[17](*See* Minute Entry, dated March 19, 2008 (CM/ECF No. 17).)

[18](*See* Scheduling Order, filed March 25, 2008 (CM/ECF No. 18).)

[19]In requesting additional time to respond, the defendants described the plaintiff's requests:

> Plaintiff submitted interrogatories to defendants consisting of twenty-two interrogatories (sixty-eight interrogatories with subparts) and fifty requests for production. Plaintiff's document requests cover a period from "January 1, 1996 through the present." Plaintiff requested all documents relating to the design, manufacture, testing and marketing of the product at issue over that time frame. Plaintiff further requested all intra-company and external communications regarding the product over that time frame. Plaintiff requested all patents,

(continued...)

2008, NYA designated a preliminary list of eight expert witnesses,[20] and then sought an extension of the pretrial schedule.[21] The defendants agreed that the schedule needed to be extended, but disagreed as to specific dates.[22] The matter was heard by the court on October 17, 2008, and the court extended fact and expert discovery to April 3, 2009, post-discovery motions to April 17, 2009 and rescheduled the pretrial conference to June 5, 2009.[23]

A dispute arose concerning Mr. Diperna's appearance in this District for the purpose of Rule 35 examinations requested by the defendants which was resolved by entry of a stipulated order.[24] At the same time, the parties also stipulated to another request to extend the pretrial schedule,[25] which was granted. The amended scheduling order extended the discovery cutoff for fact discovery to June 5, 2009 and expert discovery to September 18, 2009, the post-discovery

---

[19](...continued)
technical documents, warranties, maintenance and repair documents, government guidelines, industry guidelines, and quality ratings over that time frame.

(Defendants' Motion for Extension of Time to Respond To Discovery, filed August 7, 2008 (CM/ECF No. 27).)

[20](*See* Plaintiff's Preliminary Expert Witness List, filed September 2, 2008 (CM/ECF No. 30).)

[21](*See* Plaintiff Jonathan Diperna's Motion to Extend Case Schedule, filed September 25, 2008 (CM/ECF No. 32).)

[22](*See* Defendants' Response to Plaintiff's Motion to Extend Case Schedule, filed September 29, 2008 (M/ECF No. 33).)

[23](*See* Minute Entry, dated October 17, 2008 (CM/ECF No. 36); First Amended Scheduling Order, filed November 5, 2008 (CM/ECF No. 40).)

[24](*See* Stipulated Order Granting Defendants' Motion to Compel Plaintiff's Appearance for Rule 35 Examination, filed January 28, 2009 (CM/ECF No. 55).)

[25](*See* Stipulated Motion to Amend Scheduling Order, filed January 27, 2009 (CM/ECF No. 54).)

motion deadline to October 9, 2009, and rescheduled the final pretrial conference to November 23, 2009.[26]

In March of 2009, NYA served a second set of document requests upon the defendants,[27] and in April, the defendants filed a motion for partial summary judgment.[28]  Asserting that Michigan law governs this case, the defendants sought to dismiss plaintiff's claims for strict liability and punitive damages under Utah law.[29]  NYA filed a twenty-three page brief opposing the defendants' motion, arguing that Utah, not Michigan, has the most significant contacts with the subject-matter of Mr. Diperna's claims, particularly Utah's interest in promoting the manufacture of non-defective products.[30]

In May 2009, NYA filed a motion to extend the fact discovery cutoff yet again, pointing to the need to take depositions of eight fact witnesses, only two of whom were still employed by the defendants.[31]  The defendants opposed the requested extension, explaining that

> Plaintiff filed his case in October, 2007 . . .  This Court entered a
> scheduling order setting a deadline for fact discovery on February 2, 2009 . . .

---

[26](*See* Stipulated Second Amended Scheduling Order, filed January 28, 2009 (CM/ECF No. 56).)

[27](*See* Certificate of Service, filed March 18, 2009 (CM/ECF No. 57).)

[28](*See* Defendants' Motion for Partial Summary Judgment, filed April 21, 2009 (CM/ECF No. 58).)

[29](*See* Defendants' Memorandum in Support of Motion for Partial Summary Judgment, filed April 21, 2009 (CM/ECF No. 59).)

[30](*See* Plaintiff's Response to Defendant's Motion for Partial Summery [sic] Judgment, filed May 20, 2009 (CM/ECF No. 61).)

[31](*See* Plaintiff's Motion to Extend Certain Case Schedule Deadlines, filed May 26, 2009 (CM/ECF No. 62).)

Plaintiff took no depositions. Plaintiff instead moved to extend the scheduling order. In November, 2008, this Court granted additional time for fact discovery until April 3, 2009 . . . Again, plaintiff took no depositions. On January 28, 2009, this Court entered the parties' stipulated Second Amended Scheduling Order extending the deadline for fact discovery yet again until June 5, 2009 . . . .

[I]t was not until May 5, 2009 that plaintiff gave defense counsel, for the first time, a list of eight witnesses he wanted to depose in the next thirty days across four states (Utah, Michigan, Illinois and Colorado). Those witnesses included former Freemotion employees who have not been with the company since Freemotion closed its Colorado offices in 2008. Plaintiff offered no reason for not diligently pursuing these depositions during the previous nineteen months this case has been pending; and no indication how long it was going to take plaintiff to complete the depositions.[32]

The court granted the plaintiff's motion and extended fact discovery from June 5 to July 5, 2009.[33]

On July 6th, the court heard argument on the defendants' motion for partial summary judgment and granted the motion, ruling that Michigan law governs Mr. Diperna's claims and that his claims for punitive damages and strict liability under the Utah statutes would be dismissed.[34] The court gave Mr. Diperna twenty days to amend his complaint to plead his claims under Michigan law, and on August 10th, NYA filed an Amended Complaint on Mr. Diperna's

---

[32](Defendants' Memorandum in Opposition to Motion to Extend Case Schedule Deadlines, filed June 5, 2009 (CM/ECF No. 63), at 2, 3.) The defendants also moved to quash a subpoena served by NYA upon one of the eight witnesses listed by NYA, Mike Meluch, pointing out that Meluch had been identified as a fact witness in the defendants' initial disclosures in March of 2008, but had not been deposed by NYA since then. (Defendants' Motion to Quash Subpoena, filed June 5, 2009 (CM/ECF No. 64).) After this court extended the discovery cutoff, the defendants withdrew that motion.

[33](Order Extending Certain Case Deadlines, filed June 5, 2009 (CM/ECF No. 65).)

[34](*See* Minute Entry, dated July 6, 2009 (CM/ECF No. 70); Order Regarding Defendants' Motion for Partial Summary Judgment, filed July 22, 2009 (CM/ECF No. 71).)

behalf.[35]

A week earlier, NYA had filed a motion to withdraw as counsel for Mr. Diperna, alleging that "Diperna has failed substantially to fulfill his obligations to NYA regarding its services," that "continued representation will result in an unreasonable financial burden on the firm," and that "Diperna has made continued representation unreasonably difficult."[36]  This court heard that motion on August 21st, and based upon representations made by counsel, granted NYA leave to withdraw as counsel for Mr. Diperna.[37]  The order granting NYA's withdrawal also stayed the proceedings for thirty days to permit Mr. Diperna to obtain replacement counsel, if possible.[38]

On September 18th, attorney Craig E. Hilborn filed a motion for leave to appear *pro hac vice* as counsel for Mr. Diperna,[39] which was granted on September 21st.[40]  Four days later, NYA lodged a notice of claim of lien, asserting "an attorney lien on all proceeds in this action arising from any settlement, order, or judgment in Plaintiff's favor."[41]

---

[35](*See* Amended Complaint, filed August 10, 2009 (CM/ECF No. 77).)

[36](Motion for Attorney Withdrawal, filed August 3, 2009 (CM/ECF Nos. 72, 73), at 2; *see also* Motion to Withdraw as Counsel, filed August 6, 2009 (CM/ECF No. 74).)

[37](*See* Minute Entry, dated August 21, 2009 (CM/ECF No. 80); Transcript of Hearing, dated August 21, 2009.)

[38](Order Granting Attorney Withdrawal, filed August 25, 2009 (CM/ECF No. 79).)

[39](Motion for Pro Hac Vice Admission and Consent of Local Counsel, filed September 18, 2009 (CM/ECF No. 82).)

[40](*See* Order for Pro Hac Vice Admission, filed September 21, 2009 (CM/ECF No. 83).)

[41](Claim of Lien, lodged September 25, 2009 (CM/ECF No. 85).)

### *Quantum Meruit* Under Michigan Law

Generally, under Michigan law,

> When an attorney withdraws from representing the client, the reasons for doing so determine whether the lien will be preserved. If the withdrawal is without cause, then the attorney loses the inchoate right to a lien. On the other hand, if good cause is shown for the attorney's refusal to represent a client further, the lien for services rendered is not forfeited.

> An attorney on a contingent fee arrangement who is wrongfully discharged, or who rightfully withdraws, is entitled to compensation for and has a lien in the amount of the reasonable value of the attorney's services based on quantum meruit and not the contingent fee contract. Furthermore, even where the attorney is not wrongfully discharged, so long as the discharged attorney does not engage in disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy that would disqualify any quantum meruit award, a trial court should take into consideration the nature of the services rendered by an attorney before discharge and award attorney's fees on a quantum meruit basis.

15 Mich. Civ. Jur. *Liens* § 9 (footnotes omitted) (citing *Ambrose v. Detroit Edison Co.*, 65 Mich. App. 484, 237 N.W.2d 520, 88 A.L.R.3d 239 (1975), and *Reynolds v. Polen*, 222 Mich. App. 20, 564 N.W.2d 467 (1997)).[42]

The Michigan cases offer some guidance as to how the value of legal services may be determined under *quantum meruit* principles:[43]

> We recognize that there is no precise formula for assessing the reasonableness of an attorney's fee. Nevertheless, in *Crawley v. Schick*, 48 Mich. App. 728, 737, 211 N.W.2d 217 (1973), this Court enumerated several

---

[42]*See also Plunkett & Cooney, P.C. v. Capitol Bancorp Ltd.*, 212 Mich. App. 325, 329-31, 536 N.W.2d 886 (1995); *Morris v. City of Detroit*, 189 Mich. App. 271, 278, 472 N.W. 2d 43 (1991); *Ecclestone, Moffett & Humphrey, P.C. v. Ogne, Jinks, Alberts & Stuart, P.C.*, 177 Mich. App. 74, 76, 441 N.W. 2d 7 (1989); *Law Offices of Stockler, P.C. v. Semaan*, 135 Mich. App. 545, 550, 355 N.W.2d 271 (1984); *Rippey v Wilson*, 280 Mich. 233, 245, 273 N.W. 552 (1937).

[43]The Michigan courts understand *quantum meruit* to "mean 'as much as deserved.'" *Keywell and Rosenfeld v. Bithell*, 254 Mich. App. 300, 359, 657 N.W. 2d 759, 792 (2002) (quoting *Black's Law Dictionary* 1243 (6th ed. 1990)).

nonexclusive factors appropriately considered for such a determination, including:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

> While the trial court should consider these factors, its decision need not be limited to these guidelines. We believe that the trial court may also properly consider that the attorney originally agreed to render services on a contingency basis. . . .

*Reynolds v. Polen*, 222 Mich. App. at 29, 564 N.W.2d at 472. At the same time, the *Polen* court noted that "quantum meruit is generally determined by simply multiplying the number of hours worked by a reasonable hourly fee." 222 Mich. App. at 28, 564 N.W. 2d at 471 (citing *Ecclestone, Moffett & Humphrey, P.C.*, 177 Mich. App. at 76, 441 N.W.2d 7); *see also Idalski v. Crouse Cartage Co.*, 229 F. Supp. 2d 730, 741-42 (E.D. Mich. 2002) (discussing *Polen*). *Polen* also observed that if an attorney wrongfully withdraws, then he or she loses any claim to a lien, measured by *quantum meruit* or otherwise. 222 Mich. App. at 24-27, 564 N.W. 2d at 470-71; *see Frasco, Caponigro, Wineman, & Scheible, PLLC v. IGC Mgt., Inc.*, 2013 WL 1629421, at *4 (Mich. Ct. App., Apr. 16, 2013) (observing that "[a]n attorney may forfeit entitlement to a fee award under quantum meruit, but only if there has been a judicial determination of unethical conduct").

### NYA's *Quantum Meruit* Claim

Mr. Diperna's successor counsel vigorously contest NYA's entitlement to a lien on Mr. Diperna's settlement in any amount, arguing that NYA "wrongfully withdrew and/or abandoned

the case, engaged in unprofessional conduct and was not qualified to handle the matter.["44] Prior to moving to withdraw,

> NYA had not paid the principal liability expert, had not retained an economic expert, had not retained a life care planning expert and had not obtained vital discovery regarding other similar incidents and had allowed discovery to close. On July 21, 2009, NYA lost the motion for summary judgment on the issue of choice of law – making Michigan law applicable to the case.[45]

Nor had NYA taken a single deposition in this case by December of 2008.[46]

By August of 2009, NYA still had no expert witness report in hand establishing the existence of a design or manufacturing defect in the defendants' product, and in fact on August 5th, an NYA attorney instructed plaintiff's designated liability expert, Bruce Main, to cease work on Mr. Diperna's case.[47]   As justification for their withdrawal as counsel, NYA relied upon Mr. Diperna's purported refusal to pay what NYA had already promised to Mr. Main.[48]  Yet in a case such as this, Diperna's current counsel submits, it is customary for counsel to advance such costs until the conclusion of the case.[49]

Diperna's successor counsel argues that close on the heels of losing the partial summary judgment motion re: the Utah law strict liability and punitive damages claims, NYA decided to

---

[44](Plaintiff's Motion to Extinguish Claim of Lien, filed Nov. 12, 2010 (CM/ECF No. 123), at 1.)

[45](*Id.*)

[46](*Id.* at 2.)

[47](*Id.* at 1 n.5, 5.)

[48](Motion for Attorney Withdrawal, filed August 3, 2009 (CM/ECF Nos. 72, 73), at 4-6.)

[49]Plaintiff also contends that the same approach is contemplated by the contingent fee provision of NYA's engagement agreement with Mr. Diperna.

abandon Mr. Diperna's case, leaving him largely unprepared to proceed. Such conduct is

inequitable, counsel insists, and should serve to deny NYA any recovery under *quantum meruit*

principles.[50]

NYA responds that

[t]hroughout its over two-and-a-half years of representation, NYA devoted its best efforts to securing a favorable result. NYA prepared and filed the Complaint, engaged in extensive discovery, including written discovery requests and several depositions, coordinated discovery efforts with the liability expert, filed and responded to several motions, opposed Defendants' motion for partial summary judgment on the governing law issue vigorously, and did many other things to obtain a favorable outcome.[51]

"NYA neither wrongfully withdrew from nor abandoned the case."[52] To the contrary, NYA

insists that their withdrawal resulted from Mr. Dipurna's steadfast refusal to pay costs incurred

and expended by NYA, despite his having "settled his workers' compensation proceeding against

his former employer for a substantial amount" in April of 2009.[53] NYA asserts that it sought

more discovery (e.g., "similar incident"discovery) and expert witness preparation than Diperna's

current counsel gives it credit for:

---

[50]Yet even after NYA decided to withdraw as counsel, NYA attorneys prepared and filed Diperna's Amended Complaint, repleading his claims under Michigan law in the wake of the summary dismissal of claims under Utah law. The Amended Complaint remained Diperna's operative pleading for the duration of this case.

[51](Former Plaintiff's Counsel's Response to Motion to Extinguish Claim of Lien, filed November 29, 2010 (CM/ECF No. 126), at 5.)

[52](*Id.* at 7.)

[53](*Id.* at 9.) According to NYA, "On July 16, 2009, NYA billed Plaintiff Mr. Diperna for the Fifteen Thousand Five Hundred Forty and 57/100 ($15,540.57) Dollars of unreimbursed costs incurred and tabulated through June 30, 2009," and Diperna did not reimburse NYA thereafter. (*Id.* at 10.)

The May-July 2009 emails show close NYA coordination with Plaintiff's expert Bruce Main. In deposing these witnesses, a major NYA objective was to obtain information necessary and useful for Mr. Main's expert report. When he forwarded suggested deposition questions, NYA incorporated them into its depositions. This occurred with the Laurel Jensen, Richard Allen Compton, and Kent Smith depositions. Indeed, during those depositions, NYA incorporated Mr. Main's questions, asked questions related to Mr. Main's questions, and asked follow-up questions based on the responses on a large scale. Furthermore, in sending written discovery requests, NYA incorporated Mr. Main's suggestions and feedback into these requests. In addition, a main NYA objective was to obtain documents and information necessary and useful for Mr. Main's expert report. Indeed, a large number of deposition questions and some of the written discovery requests focused on risk assessment. For example, in Plaintiff's Second Requests for Production of Documents, Requests Two-Four focused on this area. As another example, much of Mr. Smith's deposition and certain parts of Mr. Jensen's deposition related to risk assessment. As another example, certain parts of Mr. Compton's deposition related to risk assessment. NYA deposed several witnesses, obtained responses, sent several written discovery requests, obtained responses, and moved the case forward. . . . [54]

NYA "responded to numerous Defendants' discovery requests and participated in depositions of Plaintiff and several third-party witnesses. NYA found that some witnesses that it wanted to depose were gone from Defendants and were impossible to locate."[55] NYA also defends its expert witness designations:

NYA retained several doctors from Plaintiff's workers' compensation case and a social worker as experts. But NYA did not retain an economic expert, because Plaintiff did not have any income tax returns or other records showing any significant work history. Plaintiff only produced his workers' compensation application for benefits. Rather, NYA focused on the greatest possible recovery for pain and suffering and other noneconomic damages.[56]

NYA also submits that "[b]ecause of his physical and emotional conditions, Plaintiff required

[54](*Id.* at 16-17 (footnotes omitted).)

[55](*Id.* at 17-18 (footnote omitted).) By August 2009, both sides had taken a total of nine fact witness depositions and no expert depositions.

[56](*Id.* at 17 (footnotes omitted).)

numerous consultations," and that "NYA had to spent [sic] extraordinary amounts of time in consultations with Plaintiff. To move the case forward, all these efforts were essential."[57]

Finally, NYA argues that it was qualified to handle Mr. Diperna's case, and disputes plaintiff's characterization of NYA's conduct in this and other cases as unethical.[58]

Mr. Diperna's current counsel reply that

> NYA took a case of a disabled plaintiff that NYA could not afford to get through the summary judgment stage much less the trial stage, filed it in Utah with no plan on how it was going to get Michigan fact witnesses to Utah, with no plan on how to present the economic damages, abandoned a Michigan resident in federal court in Utah with the Final PreTrial looming, allowed scheduling order deadlines to pass, and did not even bother to assist Mr. Diperna in finding new counsel.[59]

Disputing NYA's contention that Mr. Diperna's claims presented a "pain and suffering" case without significant economic loss requiring economic expert testimony, current counsel submits that in fact they "were prepared to blackboard between $8.3 and $9.2 million in economic damages – which in large part drove resolution of the matter."[60]  Indeed, counsel insists that NYA left Diperna unprepared for trial in almost all respects:

---

[57](*Id.* at 18.)

[58](*Id.* at 12, 13-15, 16-17.)  Diperna's current counsel points out that one NYA attorney working on Mr. Diperna's case was convicted of criminal misconduct and suspended from law practice in Michigan in 2008, and further alleges that NYA has been accused of fraudulent misconduct in at least two other cases not involving Mr. Diperna.  (*See* Plaintiff's Motion to Extinguish Claim of Lien, filed Nov. 12, 2010 (CM/ECF No. 123), at 1, 6-9.)  NYA's counsel dismisses these allegations as "tabloid items," and "nothing more than throwing vegetables of various degree against the wall."  (Tr. 12/17/10, at 31:22, 32:11-12 (Mr. Campbell).)  *But cf. Thomas Kinkade Co. v. White*, 711 F.3d 719, 721 (6th Cir. 2013).

[59](Reply to NYA's Response to Plaintiff's Motion to Extinguish Claim of Lien, filed December 6, 2010 (CM/ECF No. 128), at 1.)

[60](*Id.* at 4 n.2; *see id.* at Exhibits 28, 29 and 30 (reports of experts retained by Hilborn & Hilborn, P.C., and Robert Sykes, including life care planning and economic experts).)

At the time of the NYA withdrawal, the time for expert reports had passed, there was no liability expert report, no life care planning report and no economic expert report. . . . Additionally, Randall Benson, M.D., a leading neuroradiologist was not involved in the case. . . . His work found an objective brain injury. In other words, NYA had not developed a *prima facie* case.[61]

Diperna's current counsel also dispute NYA's rationale for withdrawal based upon Diperna's alleged breach of their engagement: "it is clear that that Mr. Diperna did not breach the Retainer Agreement and in fact it was NYA that no longer honored its obligations of advancing costs until the conclusion of the case."[62] Looking to language in NYA's agreement providing that NYA "'shall advance such expenses on The Client's behalf,'" and that NYA's "'Contingent Fee shall be computed on the net sum recovered after deducting from the total amount recovered all disbursements properly chargeable to the enforcement of the claim or prosecution of the action,'"[63] counsel argues that it was NYA that breached its engagement agreement by demanding reimbursement from Diperna for expert witness fees before any amount had been recovered on Diperna's behalf.[64]

---

[61](*Id.* at 3-4 (exhibit references omitted).)

[62](*Id.* at 2 (emphasis omitted).)

[63](*Id.*) As to "Distribution of Recovery," NYA's agreement also provides that "[a]ny recovery by settlement or judgment in this case shall be paid as follows: (a) to the Firm, a sum equal to *all costs of suit and expenses advanced or incurred*; . . . ." (Exhibit 1 to Former Plaintiff's Counsel's Response to Motion to Extinguish Claim of Lien, filed November 29, 2010 (CM/ECF No. 126), at ¶ 6(a).) If Diperna was obligated to reimburse NYA for "expenses advanced or incurred" *prior* to any such recovery, that would negate the apparent purpose of this priority in distribution of settlement funds.

[64]Counsel also asserts that NYA misrepresented the terms of its engagement agreement to this court at the August 21, 2009 hearing on NYA's motion to withdraw:

THE COURT: Did the written agreement say who was to pay the costs?

(continued...)

At the time of NYA's withdrawal, the status of Diperna's case was much as his current

counsel describes it. Six weeks after NYA was granted leave to withdraw, the defendants filed

another motion for summary judgment asserting that "Plaintiff has failed to produce admissible

evidence to support claims of product liability, design defect, or manufacturing defect."[65]

Diperna's successor counsel, who had entered an appearance pro hac vice on September 21st,

had to revive Diperna's relationship with Mr. Main, plaintiff's liability expert, by advancing

payment of Main's fees in order to obtain Main's expert report. By doing so, successor counsel

was able to file a memorandum opposing summary judgment on November 9th.[66] The

defendants filed a reply memorandum, and this court heard the summary judgment motion on

---

[64](...continued)
* * * * *
MR. LEDERMAN: It does, your Honor. The engagement clearly states that the client is also responsible. The firm may advance costs. Okay. The firm has advanced substantial costs. We're not talking about attorney fees here. We're talking about costs.

THE COURT: Was the advancement of costs by the firm optional?

MR. LEDERMAN: That's right.

THE COURT: It's a may rather than must. Okay.

(Transcript of Hearing, dated August 21, 2009, at 6:6-17.)

[65](Defendants' Motion for Summary Judgment, filed October 9, 2009 (CM/ECF No. 86), at 1-2.)

[66](*See* Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment, filed November 9, 2009 (CM/ECF No. 90).) Diperna's successor counsel also filed a motion to transfer venue of this action to the Eastern District of Michigan (CM/ECF No. 88), which was heard by this court on November 23rd, and denied. (*See* Minute Entry, dated November 23, 2009 (CM/ECF No. 94); Order Denying Plaintiff's Motion to Transfer Venue, filed November 30, 2009 (CM/ECF No. 93).)

December 10, 2009. The court denied the defendants' motion and extended fact and expert discovery to March 31, 2010.[67]

Discovery continued, and on January 21, 2010, the defendants filed a motion for protective order concerning some of plaintiff's discovery requests (CM/ECF No. 103). The court heard that motion on February 22, 2010, granting it in part and denying it in part, and ordering the production of certain materials within ten days.[68] Plaintiff's counsel requested and were granted a further extension of time for discovery, *viz.,* until July 16th for fact discovery and August 27th for expert discovery.[69] In September 2010, the parties jointly requested an extension of the pretrial conference schedule to allow for mediation, which was also granted.[70]

On November 12th, Diperna's counsel also filed the instant motion to extinguish NYA's claim of lien (CM/ECF No. 123). At the December 17th hearing on that motion, the parties announced on the record that they had reached a settlement of Mr. Diperna's claims against the defendants.[71]

_____

[67](*See* Minute Entry, dated December 10, 2009 (CM/ECF No. 96); Order Denying Defendants' Motion for Summary Judgment, filed December 30, 2009 (CM/ECF No. 100).)

[68](*See* Minute Entry, dated February 22, 2010 (CM/ECF No. 108; Order Granting in Part and Denying in Part Defendants' Motion for Protective Order, filed March 9, 2010 (CM/ECF No. 109).)

[69](Stipulated Amended Scheduling Order, filed May 18, 2010 (CM/ECF No. 116).)

[70](*See* Minute Entry, dated September 30, 2010 (CM/ECF No.122).)

[71](*See* Tr. 12/17/10, at 4:4-20.) Given the parties' confidentiality agreement, counsel disclosed the amount of the settlement to this court *in camera*. (*Id.*) The same information was available to the court of appeals—if the panel had asked for it.

**Evaluating NYA's *Quantum Meruit* Claim**

Both NYA and Diperna acknowledge that at this point, NYA's claimed lien for attorney's fees and expenses finds its footing in *quantum meruit* rather than the express terms of NYA's engagement agreement with Diperna. Mr. Diperna's current counsel insists that NYA's *quantum meruit* recovery should be barred altogether by NYA's deficient performance and unethical conduct amounting to an inequitable abandonment of Mr. Diperna's case at a crucial moment.[72] NYA responds that Mr. Diperna enjoyed the benefit of NYA's 1,150 "tracked" hours of hard work on his behalf,[73] and NYA should at least enjoy the financial benefit of a typical Michigan attorney referral fee in a contingent fee case, namely one-third of one-third of the plaintiff's recovery.[74]

Having heard and considered the arguments of counsel and having reviewed the various exhibits submitted in support of their positions, this court concludes—as it did in 2011—that under Michigan Law, NYA did not engage in behavior so unethical and inequitable, namely the *abandonment* of Mr. Diperna's case, that would bar its recovery of attorney's fees on the basis of

---

[72](*See* Tr. 12/17/10, at 5:20-13:2 (Mr. Sykes).)

[73]As summarized by NYA's counsel, in two-and-a-half years Mr. Yatooma himself contributed approximately 17.75 hours (at a rate of $500 per hour) to Mr. Diperna's case. "The bulk of the time is divided between Mr. Lederman, 451 hours, being billed at 375 an hour, and Ms. Shari Lesnick, . . . 360.75 hours that were billed at a rate of $425 an hour." (*Id.* at 28:15-24 (Mr. Campbell).)

[74](*See id.* at 28:10-31:12, 44:21-45:3 (Mr. Campbell).) In this case, one-ninth of the plaintiff's recovery would approximate $89,000. Based on the value of services rendered and costs expended, this court originally awarded NYA a little more than half that amount, *viz.*, $45,000, as a reasonable *quantum meruit* recovery in this case. (Order Regarding Claim of Lien, filed March 11, 2011 (CM/ECF No. 136), at 2.)

*quantum meruit.*[75]  With no liability expert report in hand at the time NYA withdrew, NYA did

leave Diperna at a strategic disadvantage in addressing the defendants' motion for summary

judgment filed six weeks later.  Yet NYA engaged Mr. Main, paid his initial $2,000 retainer, and

worked with him in pursuing fact discovery in aid of his liability analysis.  Upon being advanced

additional payment by Diperna's successor counsel, Main furnished expert opinion evidence that

proved material to Diperna's defeat of the defendants' motion two months after it was filed.

Moreover, while seeking to withdraw, NYA drafted and filed Diperna's Amended Complaint

that recast his claims under applicable Michigan law—a pleading relied upon by Diperna's

successor counsel for the remainder of the case.  Having suffered the setback of losing on the

merits of the choice of law issue, NYA may have concluded that the recovery originally

envisioned was no longer available given the confines of Michigan product liability law, but

NYA did not leave Diperna entirely in the lurch.

Hindsight suggests that NYA should have accomplished much more in terms of

substantive discovery work, given the hundreds of attorney hours tracked during the two-and-a-

half years they had the case, and that important case preparation work still remained undone in

August of 2009 when NYA withdrew.[76]  But NYA did not wholly abandon Diperna to start over

from scratch.  The record reflects that Diperna's successor counsel obtained and made some use

of the work product generated by NYA in further pursuing Diperna's claims to final settlement.

---

[75]It seems clear under Michigan law that "[a]n attorney may not recover for services
rendered if those service[s] are rendered in contradiction to the requirements of professional
responsibility and inconsistent with the character of the profession." *Evans & Luptak, PLC v.
Lizza*, 251 Mich. App. 187, 197; 650 N.W. 2d 364 (2002).

[76](*See* Tr. 12/17/10, at 11:24-12:9 (Mr. Sykes).)

NYA furnished a fairly detailed "pre-billing" summary of the time expended on Mr. Diperna's case.[77]  From the hours tracked by NYA, it appears that NYA attorneys and staff spent considerable time *conferring*—amongst themselves, or with Mr. Diperna, among others.  Of more lasting value to the prosecution of Diperna's case are the hours expended to produce more tangible results: drafting and filing of pleadings, preparing and serving discovery requests and responses, engaging expert witnesses and assisting in their preparation.  Consequently, in assessing the reasonable value of NYA's services, this court accords greater significance to NYA's tangible work product which played at least some part in Diperna and his successor counsel reaching a final settlement of his claims more than one year after NYA withdrew.[78]  *Cf. Idalski v. Crouse Cartage Co.*, 229 F. Supp. 2d 730, 742 (E.D. Mich. 2002) (reading Michigan case law to say that compensation under the *quantum meruit* standard covers only those services, if any, which "produced 'definite valuable results'" to plaintiff (quoting *Reynolds v. Polen*, 222 Mich. App. at 25, 564 N.W.2d at 470 (quoting *Rippey v. Wilson*, 280 Mich. 233, 246, 273 N.W. 552, 556 (1937)))).

Keeping the *Crawley* factors in mind,[79] a review of the various written materials that have

---

[77](*See* Exhibit 12 to Plaintiff's Motion to Extinguish Claim of Lien, filed Nov. 12, 2010 (CM/ECF No. 123).)  NYA counsel relied upon this summary at the December 17, 2010 hearing —as did the court in making its *quantum meruit* findings, both then and now.

[78]Conversely, the court assigns much less value to conference time, particularly discussions among NYA attorneys themselves.  Nor does this court find gambits such as NYA's unsuccessful motion practice concerning the locus of the Rule 35 examinations to be of great moment.

[79]*Cf. Toth v. Calcasieu Parish*, 2011 WL 3739045, at *2 (W.D. La. 2011) ("NYA's recovery may be substantially reduced by looking to the following factors: "'(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in
(continued...)

been furnished by counsel gives some insight into the skill, time and labor involved in the work performed by NYA—and the work that still remained to be done at the time NYA withdrew—as well as the relative degree of difficulty of Mr. Diperna's case. Those same materials shed less light upon the professional standing and experience of the NYA's attorneys; if anything, they cast some doubt upon NYA's professional integrity[80] and overall familiarity with products liability litigation. It also appears that the hourly rates at which NYA attorneys' time was "tracked" significantly exceed the average hourly rates for Michigan lawyers at or near that same time.[81]

This court has taken into account the NYA attorney time expended on legal work[82] that

---

[79](...continued)
question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.'" (quoting *Crawley v. Schick*, 211 N.W.2d 217, 222 (1973))).

[80]In particular, the strange career of NYA attorney/administrator Edward Fisher raises the proverbial eyebrow. During the period that NYA represented Mr. Diperna, it appears that Fisher was convicted of conspiracy to commit tax fraud on July 3, 2008, and was suspended from the practice of law in Michigan. Yet Fisher continued to perform some legal work on this case (purportedly as an "administrator" whose time was tracked at $200/hour), and it was Fisher who instructed Mr. Main to cease work on Diperna's claims when NYA decided to withdraw. (*See* Exhibit 6 to Plaintiff's Motion to Extinguish Claim of Lien, filed Nov. 12, 2010 (CM/ECF No. 123).) Mr. Fisher's conviction was subsequently affirmed on appeal. *See United States v. Fisher*, 648 F.3d 442 (6th Cir. 2011).
    It also appears that NYA counsel was not completely candid with this court at the August 21, 2009 hearing as to the terms of NYA's engagement agreement with Mr. Diperna.

[81]According to a State Bar of Michigan 2010 *Economics of Law Practice Summary Report*, the average hourly rate of a senior associate in Michigan is $222, and the average hourly rate of an attorney with 26 to 30 years of experience is $248. *Mitchell v. City of Warren*, 2012 WL 5334133, at *3 (E.D. Mich. 2012). As noted above, NYA tracked hours for Mr. Lederman and Ms. Lesnick at $375 and $425 per hour, respectively. Those "tracked" rates are not probative—or even persuasive—as to the reasonable value of the legal services rendered by NYA in this case.

[82](*See* Exhibit 12 to Plaintiff's Motion to Extinguish Claim of Lien, filed Nov. 12, 2010
(continued...)

directly yielded some direct tangible benefit to the pursuit of Mr. Diperna's claims (as well as the

expenses thus incurred by NYA);[83] and has balanced the value of that time against the

deficiencies in NYA's work product at the time of NYA's withdrawal,[84] and the work

subsequently performed and expenses incurred by Diperna's successor counsel in proceeding to

---

[82](...continued)
(CM/ECF No. 123), *passim*.)  The court also excludes from consideration the time expended by NYA attorneys and support staff on tasks that were more clerical in nature (*e.g.*, "preparing documents for faxing and mailing," "made copies of medical records," "gathered documents," "transcription of correspondence"), or tasks whose descriptions are nebulous or obscure (*e.g.*, "attention to posture of litigation," "reviewed court document").  *See generally Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").  Nor has the court taken into account any hours of NYA attorney time tracked for the preparation of NYA's motion to withdraw—time which NYA itself tracked as "nonbillable," and any hours tracked for Edward Fisher ("EF") from and after July 3, 2008.

[83]Sifting NYA's "pre-billing" time summary for tasks which produced some tangible work product—attorney services that likely produced "definite valuable results" to plaintiff 6in reaching the ultimate result—the court has identified approximately 293.25 "tracked" NYA attorney hours that appear to match that description.  Taking an average hourly rate of $230 and adjusting it downward by one-third, based upon this court's evaluation and balancing of the Michigan *quantum meruit* factors enumerated in *Crawley*, yields:

**293.25 hours x ($230/hour x 0.667) = $44,987.48**

[84]Though Mr. Main informed NYA that his expert report was essentially complete, and was in "draft" only in the sense that it awaited NYA's review, NYA declined to advance the additional costs necessary to obtain the actual report, leaving Mr. Diperna in August 2009 without expert evidence in hand that was significantly probative of liability, and thus without "a *prima facie* case" going forward, as Diperna's successor counsel suggests.  Diperna's successor counsel advanced the costs to resolve that problem, and obtained Mr. Main's report by October 22, 2009, in time to defeat the defendants' motion for summary judgment.  (*See* Tr. 12/17/10, at 11:14-22 (Mr. Sykes); *see* Exhibit 2 to Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment, filed November 9, 2009 (CM/ECF No. 90).)
On July 5, 2009, NYA came upon the thrice-extended fact discovery cutoff with significant discovery work left incomplete, though NYA had been litigating the matter for nearly two years.  With the advent of Diperna's successor counsel, the court ultimately extended discovery until July-August 2010 to allow the necessary work to be completed.

final settlement of the matter.[85]  Once again taking into account the value of the result thus

achieved,[86] this court concludes that its original finding, namely, that the sum of $45,000

represents the reasonable value of NYA's legal services rendered to Mr. Diperna in this case, is

substantially correct, and will fairly and reasonably compensate NYA for those services, with one

adjustment: the $45,000 amount is *not* inclusive of the actual costs expended by NYA.  NYA is

thus entitled to recover the sum of $45,000, *plus* the $16,876.90 in cost expenditures previously

stipulated to by counsel, for a total *quantum meruit* recovery of **$61,876.90**.[87]

For the reasons explained in greater detail above,

---

[85]Diperna's successor counsel reported advancing $74,000 in costs in pursuing Mr. Diperna's claims—more than *four* times as much as NYA had advanced in the preceding two years.  (*See* Tr. 12/17/10, at 47:12-14 (Mr. Hilborn).)

[86]*Cf. Diperna v. Icon Health and Fitness, Inc., et al.*, 491 Fed. Appx. at 907, slip op. at 7 (complaining that "the record before us does not disclose what success Mr. Diperna's case ultimately achieved. And it is difficult (if not always impossible) to assess the value a lawyer added to a contingency case without knowing what value the client obtained.  Or at least without knowing why the district court thought the value obtained didn't matter.").)

As noted above, this court *knew* what ultimate result was achieved because counsel disclosed the same to the court *in camera* at the December 17, 2010 hearing.  (*See* Tr. 12/17/10, at 4:4-20.)  Why the court of appeals would surmise that "the district court thought the value obtained didn't matter" proves baffling, given that " the amount in question and the results achieved" was plainly a factor in evaluating *quantum meruit* recovery under Michigan law, *see Reynolds v. Polen*, 222 Mich. App. at 29, 564 N.W.2d at 472, and was material to this court's original determination of the $45,000 award.

[87]This amount represents a little more than two-thirds of the "third-of-a-third" measure posited by NYA's counsel as "fair" compensation for NYA's services at the hearings on this matter, or approximately 7.7 percent of Mr. Diperna's total settlement amount.  (*See* Tr. 12/17/10, at 24:5-7 (Mr. Campbell) ("we understand we're not asking for anything more than a fair share of the fee as it would be determined under the contingency")).)

Had Mr. Diperna been unsuccessful in retaining competent successor counsel as soon as he did after NYA's rather abrupt withdrawal, he may well have fallen prey to the defendants' second Rule 56 motion, and any such fractional or percentage fee measures would have proven to be purely academic.

**IT IS ORDERED** that Plaintiff's Motion to Extinguish Claim of Lien (CM/ECF No. 123), is GRANTED IN PART AND DENIED IN PART, such that NYA may enforce its attorney's lien to the extent of **$61,876.90**, representing the sum of costs actually disbursed and the reasonable *quantum meruit* value of legal services rendered by NYA to the plaintiff in connection with the above-captioned proceeding, the same to be paid from the settlement funds previously paid by the defendants in this case.

DATED this _9_th_ day of October, 2013.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge